(22 App. Div. 346.)

## SALISBURY v. SLADE.

(Supreme Court, Appellate Division, Third Department. November 10, 1897.)

1. WILL—TRUST—ESTATE VESTED—LIMITATIONS.

    1 Rev. St. p. 729 (statute of uses and trusts) § 60, declaring that every valid express trust shall vest the whole estate in law and equity in the trustee, is modified by the subsequent sections providing for limitations of remainder thereon, so that, where a remainder under a will is so limited, the "whole estate" vested in the trustee is the estate subject to the trust, and on the termination of the trust the remainder survives unaffected by any unauthorized disposition thereof by the trustee.

2. SAME—CONSTRUCTION.

    The mere use of the word "paid" raises no inference that it was testator's intention that land should be sold during the lifetime of his daughters, where,

after settling the same on them as a life estate, the will recites: "And, on the decease of either, the share belonging to the one so dying to be paid to her children."

**3. REFERENCE—ACCOUNTING.**

After deciding the title of land in defendant's possession to be in plaintiff, a reference may be ordered to take accounting of all equitable claims between the parties, to determine questions of waste and good faith by the defendant, and to decide to whom the proceeds of a former sale belong.

Appeal from special term, Saratoga county.

Action by Edwin F. Salisbury against Benjamin F. Slade and others for partition. From an interlocutory judgment in favor of plaintiff, defendant Slade appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

C. S. Lester, for appellant.

Thomas O'Connor, J. W. Houghton, and George B. Lawrence, for respondent.

LANDON, J. The appellant, Benjamin J. Slade, contends that he is the sole owner in fee of the entire premises, and that the plaintiff owns no interest therein, and that, therefore, the judgment appealed from, which, among other things, declares the plaintiff to be the owner of one undivided twenty-eighth part thereof, should be reversed. This contention is based upon the will of Benjamin Slade, the father of the appellant, and the grandfather of the plaintiff; and also upon a former judgment of partition, and the purchase by the plaintiff of the entire premises under the judgment. Benjamin Slade, the common source of title, died March 10, 1875, leaving a widow and seven children him surviving, of whom the appellant, Benjamin J. Slade, was one, and Jane F. Salisbury, the mother of the plaintiff, another. By the second clause of his will he devised to his widow, in lieu of dower, his household furniture and the use of a designated part of his homestead farm during her natural life, and provided that upon her death the same should be divided among his children as provided in the third provision of his will, as follows:

"Third. I give, devise, and bequeath unto my children, Sarah A., Benjamin J., Jane F., Catherine A., John D., Anna M., and Fayette, all the rest, residue, and remainder of my estate, real and personal, to be divided equally between them, share and share alike, to have and to hold to them, their heirs and assigns, forever, except that the shares to my daughters, Sarah A., Jane F., Catherine A., and Anna M., aforesaid, shall remain and be held by my said executors hereinafter named in trust for them during the natural life of each of them, the use, income, and interest arising therefrom to be paid semiannually to each of them, and, upon the decease of either, the share belonging to the one so dying to be paid to her children; and except, further, that the balance of the home farm on which I now reside, the use and occupation of which has not been given to my said wife, shall not be sold or divided up during her natural life, or so long as she remains my widow, but shall be held by and remain in charge of my executors, and be by them managed for the best interest of my estate, and out of the rents, profits, and income of the same I order and direct them to pay unto my said wife, so long as she remains my widow, an annuity of two hundred dollars in quarterly payments from my decease."

The will appointed the appellant, Benjamin J. Slade, and Nathan P. Gates executors thereof, but did not expressly appoint them trus-

tees. The appellant qualified and served as executor. Nathan P. Gates did not qualify or serve. The testator's widow soon after died, and in 1879 the appellant commenced an action for the partition of the premises in question, and made all the children of the testator parties, including Jane F. Salisbury, mother of the plaintiff, but he did not make the plaintiff or any of the children of Jane F. a party to the action. Jane F. Salisbury died December 24, 1893, leaving surviving her the plaintiff and three other children, all of full age. In the judgment in that action it was adjudged that Jane F. Salisbury was entitled to the use of one undivided seventh part of the premises, and that out of the net proceeds of the sale one-seventh thereof be paid to Benjamin J. Slade, who was directed to invest the same on bond and mortgage in his name as trustee for the use of said Jane F. Salisbury. Upon the sale the appellant bought the premises, and now contends that the plaintiff's interest therein was extinguished, and that his sole recourse is to the fund which was invested for the use of Jane F. Salisbury, for which he is ready to account. Since the plaintiff was not a party to the former action, the question is whether, under the will, the share of Jane F. Salisbury was devised to the executors as the trustees of an express trust, with the direction to convert the same into money, and pay the income thereof to Jane F. during her life, and the principal in equal shares to her children upon her death. If so, the plaintiff has no title in the land, but must look to the trustee or to the fund in his hands. 1 Rev. St. p. 729, § 60. If, however, there was no devise of the lands to the executors, or, if a devise, one in trust for the life of Jane F. and for her use only, without power of converting the land into money, then the trust ceased upon the death of Jane F. (1 Rev. St. p. 730, § 67); and the share of the plaintiff vested in him in fee and possession pursuant to the direction of the will (Id. § 61; Losey v. Stanley, 147 N. Y. 567, 42 N. E. 8).

It will be observed that the testator in the third clause of his will provides:

"I give, devise, and bequeath unto my children [naming Jane F. and the six others] all the rest, residue, and remainder of my estate, real and personal, to be divided equally between them, share and share alike, to have and to hold to them, their heirs and assigns, forever."

Had the provision ended here, the devise and bequest would have been absolute (the devise is to the daughters, not to the executors); but the will continues:

"Except that the shares to my daughters [naming Jane F. and the three others] shall remain and be held by my executors hereinafter named in trust for them during the natural life of each of them, the use, income, and interest arising therefrom to be paid semiannually to each of them."

Thus, an express trust is created under the third subdivision of section 55, 1 Rev. St. p. 728, which provides that express trusts may be created "to receive the rents and profits of land and apply them to the use of any person, during the life of such person." It is plain that this trust can be executed with respect to lands without selling them, and therefore the power of sale, not being expressed

in the will, should not be inferred.    Gourley v. Campbell, 66 N. Y. 169.

The sixtieth section of the statute of uses and trusts (1 Rev. St. p. 729), which declares that "every express trust valid as such in its creation, except as herein otherwise provided, shall vest the whole estate in the trustees in law and equity, subject only to the execution of the trust," is qualified by the sixty-first and subsequent sections, which authorize the limitation of a remainder thereon.    Stevenson v. Lesley, 70 N. Y. 513; Embury v. Sheldon, 68 N. Y. 227; Townshend v. Frommer, 125 N. Y. 446, 26 N. E. 805.    The "whole estate," therefore, that is vested in the trustee, is the estate subjected to the trust, and it ends with the termination of the trust; and if, as in the case before us, the remainder survives such termination, it survives it unaffected by the trust, and, of course, by any unauthorized disposition which the trustee may make of such remainder.   The word "paid" is used by the testator, but it stands adjudged that that word is equivalent to the word "apply," as used in the third subdivision of section 55.    Leggett v. Perkins, 2 N. Y. 297.    Hence no inference of an intent to authorize a sale in order to pay the income of the proceeds flows from the word "paid."   Of course, the trustee could pay to each daughter her share of the rents of the land when collected by him.    But the will proceeds: "And, upon the decease of either, the share belonging to the one so dying to be paid to her children." As there was no need of selling the land in order to pay to each daughter her share of the income from it, and there is no express direction in the will to sell it, there was no need or power to sell it in the daughter's lifetime.    If any reason for selling it exists, it arises from the expression, "the share of the one so dying to be paid to her children."    What was the share of the one so dying as it was understood by the testator?  · Clearly, the share which he had devised and bequeathed to her so absolutely in the first part of his third provision, which he next provided should "remain and be held by my said executors in trust."    The share should be held and remain as he devised it.    It is not clear that he intended it to be sold.    Equity will never presume a conversion unless it is demanded to accomplish the lawful purposes expressed in the will by the testator.    Chamberlain v. Taylor, 105 N. Y. 186, 11 N. E. 625; Hobson v. Hale, 95 N. Y. 598. We are asked to infer such direction from the fact that the share of each daughter is to be paid to her children upon her death.    Except for the word "paid" the inference of a direction to sell is without support.    The word is usually applicable to money.    It is not usual, and perhaps not accurate, to use it with reference to land, but we have no difficulty in understanding that the testator intended by it that "the share belonging to the one so dying" should go to her children upon her death.    Chamberlain v. Taylor, at page 191, 105 N. Y., and page 626, 11 N. E.    Thus understood, the trust devolved upon the executors did not include the power of sale, and did terminate with the death of the plaintiff's mother, as to her share.    1 Rev. St. p. 730, § 67.

Thus, the executor took, as trustee of an express trust, the title to the estate devised to the mother of the plaintiff for her life, and

no longer (Losey v. Stanley, supra; Brewster v. Striker, 2 N. Y. 19; Watkins v. Reynolds, 123 N. Y. 211, 25 N. E. 322); and, as he had no direction to sell in order to execute the trust, he had no title to the remainder, and hence that was vested in right in the plaintiff upon the death of the testator, and in possession upon the death of the plaintiff's mother (Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811; In re Tienken, 131 N. Y. 391, 30 N. E. 109). Hence in the first partition action, to which the plaintiff was not a party, his title was not sold or affected, and thus his right to maintain this action is clear.

Various exceptions taken by the appellant to the rulings of the trial court are pressed upon our attention. The court upon the trial having determined the shares of the respective parties, and directed that the premises be sold, also directed that before the sale the referee appointed by the court should take an accounting of all the rights, shares, and interests of the parties in and to the premises, the use thereof, the proceeds of any alleged sale that has heretofore been made, and what has been done with such proceeds, and as to the good faith of the former sale and of appellant's possession thereunder, and as to the issues respecting waste by the appellant charged in the complaint, and report thereon to the court, with the evidence, to the end that the court might decide thereon. The court had the power to make this reference upon these questions incidentally arising. Code Civ. Proc. § 1015. The appellant objects that the reference embraced the same matter that the court had decided, namely, the several shares of the respective parties. We do not so understand the order. It was to take an accounting, as to the equities between the parties, as to the respective shares growing out of transactions affecting them. The appellant was in possession of the entire premises, claiming adversely to the plaintiff and to some of the other parties. In such case, equity, following the law, could compel him to account for the use of their respective shares, since their right to the possession of them had accrued. Osborn v. Schenck, 83 N. Y. 201. The appellant was liable to the plaintiff as remainderman for the waste he had committed, and the issue respecting it was framed by the pleadings. The action was in equity, was triable by the court, and the trial proceeded before the court without demand that any issues be tried by a jury, until after the court announced the disposition it would make of the case. It was then too late to demand a jury trial upon the issue of waste. Sono v. Weiller, 128 N. Y. 655, 28 N. E. 653. As to the proceeds of the former sale, it apparently was in the interest of the appellant to have some adjudication respecting the part thereof which the appellant claimed to hold as trustee for the plaintiff and the other parties in like situation. If they owned the land, they did not have any claim upon this fund. The appellant is right in claiming that, if he was trustee of the plaintiff's share with direction to convert it into money, then the plaintiff could not maintain this action, but must have recourse to the trustee, or to the fund, or both, since, to maintain this action, plaintiff must have an undivided interest in the land, instead of an interest in its proceeds. But it was alleged in the answer of the brothers of the plaintiff, in like situation with him, that the appellant, by

his unfair proceedings in the former action, contrived to purchase the premises for much less than they were worth, and therefore a case of a sale in contravention of the trust was made, and thus was void. 1 Rev. St. p. 730, § 65. We do not think that the abuse of the trust, in the execution of it thus charged, is the sale in contravention of it forbidden by the statute; but, if these answering defendants thought it was, they had the right to present the question, to the end that they might base their title upon two grounds instead of one. In that view, it was undoubtedly within the discretion of the court to direct that evidence be taken by the referee bearing upon the former sale and disposition of the proceeds before passing upon the question thus presented. The judgment should be affirmed, with costs. All concur.